Filed 7/8/14  P. v. Salazar CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064366 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD238365) |
| RICHARD ANGEL SALAZAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Kenneth K. So, Judge.  Affirmed.

Mazur & Mazur and Janice R. Mazur, under appointment by the Court of Appeal,

for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Peter Quon Jr., and Parag

Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

In 2011, Richard Angel Salazar (Salazar) pled guilty to corporal injury to spouse (Pen. Code, § 273.5, subd. (a))[1] and attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)).  He admitted one serious felony prior conviction (§ 667, subd. (a)(1)) and one strike prior (§§ 667, subd. (b)-(i), 668, 1170.12) arising from a 2008 conviction in which he pled guilty to dissuading a witness from giving testimony (§ 136.1, subd. (a)), but he reserved the right to appeal the validity of this prior.  The court sentenced Salazar to a total term of 14 years four months, which included a five-year enhancement for the 2008 serious felony prior conviction.

Salazar contends on appeal the trial court erred in declining to declare the 2008 serious felony prior conviction invalid for purposes of sentence enhancement.  He argues the preliminary hearing transcript, to which he stipulated as providing a factual basis for the 2008 plea, does not actually contain a sufficient factual basis as required by section 1192.5.  Therefore, he argues, the court's acceptance of his 2008 plea was constitutionally defective.  The People contend the court did not err in denying motions to invalidate the 2008 conviction because (1) the trial court was not obligated to consider a pretrial collateral attack on the factual basis for a prior conviction since lack of factual basis is not a recognized constitutional defect and (2) even if such a motion is cognizable, the 2008 conviction was supported by a factual basis, as stipulated by defense counsel.  We find no error and affirm.

---

1       All further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

Christina H. Salazar (Christina)[2] met Salazar in 2005 married him in 2006.  They have two children.  They have a history of domestic violence.  We describe relevant incidents in 2008 and 2011.

A.    *2008 Incidents and Plea*

During an argument with Salazar over a cell phone charger, Christina sustained bruises in February 2008.  She initially told the police Salazar struck her with the base of the cell phone charger because he was angry, but at the preliminary hearing, she stated the charger accidentally hit her when he yanked it from her hands.

When Christina came home the following day, she found Salazar had been drinking throughout the day.  They argued about money to repay a relative for a car.  Since the vehicle was impounded the week before when Salazar received a driving under the influence charge, they also argued about getting the car out of impound.

Christina initially told the police Salazar slapped and punched her in the head several times during the argument while she held their daughter in her arms.  At the preliminary hearing, however, she testified they pushed each other around, but it was not aggressive.

When Christina asked Salazar to leave, he refused.  At one point, she locked Salazar out of the house.  She reported to police he threatened to kick the door down if

2      For purposes of clarity, we refer to Christina Salazar by her first name.  We intend no disrespect.

3

she did not open it, so she complied. At the preliminary hearing, she testified she did not recall Salazar threating to kick down the door.

Christina also reported Salazar grabbed their daughter from her arms and told Christina she would see what would happen if she did not get him the money. She reported she went to get the money because she feared for her safety and the safety of their daughter. At the preliminary hearing, however, she denied he grabbed their daughter from her arms and stated she gave him their daughter. She also denied being frightened when she decided to get the money.

After Christina unsuccessfully tried to cash a personal check at a liquor store, Salazar demanded she go to a drive-through automatic teller machine at a bank. She was able to withdraw the daily limit of $400. When she gave Salazar the money, he was upset they could not get more and wanted to see a bank representative. Salazar turned the car off, took the keys from the ignition and got out of the vehicle to smoke a cigarette while Christina attempted to get money from another account. They continued to argue.

A woman behind them asked if Christina needed help or if anything was wrong. Christina initially reported she asked the woman to call the police. However, Christina testified at the preliminary hearing she only asked the woman to see where Salazar was as a distraction. Christina left without Salazar and drove to her mother's house where a relative called 911.

When Christina met with a police detective a couple of days later for a follow-up interview, Christina had visible injuries. The jaw area on the right side of her face was red and swollen. There were several bruises in the center of her chest below the neckline

4

and a very large bruise on her right arm. Christina reported she was afraid of Salazar and did not want to press charges.

Salazar was charged with two counts of inflicting corporal injury to Christina (§ 273.5, subd. (a)), kidnapping (§ 207, subd. (a)), extortion (§ 520) and cruelty to a child by endangering the health of the child (§ 273a, subd. (b)).

At the preliminary hearing, the court found Christina's testimony was not credible insofar as she attempted to assume responsibility and to absolve Salazar. The court found "her statements in court that she did not recall that she told the officer this or that to be evasive rather than honest failures of recollection" and "her statements made to the police to be credible; that is to say . . . she told the truth when she was talking to the officers. [¶] . . . I find the facts to be what [the police] testified [Christina] said." The court found Christina was protecting Salazar when she lied about what happened. The court commented, "[i]t also doesn't escape the court's attention that [Salazar] looks like a guy who can handle himself. He looks pretty well put together and physically competent. And certainly [Christina] would be no physical match for him." The court found probable cause to believe Salazar committed all of the offenses alleged in the complaint and held him to answer those charges.

After the preliminary hearing, the court granted the People's motion to amend the complaint to charge Salazar with attempting to dissuade a witness from giving testimony. (§ 136.1, subd. (a).) Salazar pled guilty to attempting to dissuade a witness from giving testimony in exchange for a dismissal of the balance of the charges and a stipulation to the low term of 16 months.

At the change of plea hearing, Salazar affirmed he had time to talk to his lawyer about the charges and he knowingly and intelligently waived his constitutional rights. Salazar and his attorney stipulated to the preliminary hearing as a factual basis for the plea.

B.     *2011 Incident*

On December 30, 2011, Christina was home with their son making dinner when she heard the doorbell ring. Salazar appeared at Christina's door intoxicated and angry. He asked why she had not picked him up from jail earlier in the day. When Salazar asked to see his son, Christina went outside with their son. She closed and locked both an interior door and a security screen door behind her. She let Salazar hold their son while they talked. She scolded him for coming to see his son while intoxicated. They discussed why she did not pick him up from jail and her concerns why the relationship would not work unless they went to counseling.

When Christina went back into the house with her son to get Salazar a sweater, she closed and locked both doors. She had a bad feeling because Salazar had been violent and abusive in the past. As she called 911, Salazar began knocking and kicking the doors. He broke in by pulling off the security door and kicking in the interior door.

Salazar went straight to Christina and began punching her in her face and head while their son was in her arms. He knocked the cell phone from her hand and hit her 30 to 50 times. Salazar also hit their son. At some point, Christina was knocked to the ground and she took the beating while she covered their son. Salazar stomped on her and kicked her head. Christina was afraid for her life and the life of their son.

6

At one point, when Salazar sat on the couch to take a break, Christina got up from the ground and called her sister. Salazar again started hitting Christina with his hands and feet, again knocking her to the ground. He grabbed her cell phone and threw it to the ground, breaking it.

Christina sustained bruises and a shoe mark was left on her face. Their son sustained scratches on his nose, a bloodied lip and bruises and bumps on his head.

## C. 2011 Charges and Procedural Background

Salazar was charged with first degree burglary of an inhabited portion of a building (§§ 459, 460), corporal injury to spouse (§ 273.5, subd. (a)), child abuse (§ 273a, subd. (a)), assault by means likely to produce great bodily injury (§ 245, subd. (a)(1), and attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)). It was specially alleged Salazar served five prior prison terms (§§ 667.5, subd. (b), 667.6, subd. (b), 668) for convictions in 1996, 1998, 2003, 2007, and 2008. It was also specially alleged Salazar was convicted of one serious felony prior (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and one strike prior, both arising from the 2008 conviction. (§§ 667, subds. (b)-(i), 1170.12, 668.)

Salazar brought a motion in limine asking the court to declare the 2008 conviction not valid as a strike or prison prior on the ground there was no factual basis to support the guilty plea. The court denied the motion concluding a collateral attack not involving constitutional grounds is not permitted. Since there is no question about the existence of the prior, but only whether it can be used as a basis for enhancement if the statute was not properly followed, the court determined a motion to declare the prior invalid is not the

7

proper vehicle. The court and the parties discussed Salazar bringing a writ of error *coram nobis*.

Instead, Salazar filed a motion to withdraw the 2008 guilty plea and to declare the conviction void *ab initio* for lack of factual basis. Salazar argued the People could not present admissible evidence to prove he was convicted of the 2008 prior because it lacked a factual basis. He also asked to withdraw the guilty plea and go to trial on the original charges arguing section 1192.5 requires a factual basis for the plea. The court denied the motion without prejudice indicating the proper way to attack the validity of the conviction is through a writ, not a motion to withdraw the plea years after the fact.

Salazar then filed a motion to set aside the 2008 prior conviction and a petition for writ of error *coram nobis* raising the issue of whether a guilty plea for which there was no factual basis can be set aside after he served a prison term for the conviction. Salazar argued he only recently learned from his attorney there was no factual basis for the 2008 guilty plea. He also argued he was denied his constitutional rights when the court accepted his guilty plea without a factual basis.

The People opposed the motion and writ petition arguing there is no basis for granting a writ of error *coram nobis* because there were no new facts unknown to Salazar at the time of the change of plea hearing, there is no constitutional error, and the preliminary hearing transcript contains an adequate basis for the plea. The People pointed out Christina told a different version of events at the preliminary hearing than she told the police at the time of the arrest and the court made factual findings that Christina lied about what Salazar did to her and their daughter, Salazar looked "physically

8

competent" and Christina was no physical match for him, and her attempts to assume responsibility and to absolve Salazar were not credible. The People argued this provided the necessary support for the charge of witness intimidation. The court denied the motion and petition for writ of error *coram nobis*.

Salazar pled guilty to corporal injury to spouse (§ 273.5, subd. (a)) and attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)). He admitted five prison priors (§ 667.5) as well as one serious felony prior (§ 667, subd. (a)(1)) and one strike prior (§§ 667, subd. (b)-(i), 668, 1170.12), both from the 2008 conviction. Salazar reserved the right to appeal the validity of the 2008 strike. The court sentenced Salazar to a total term of 14 years four months, which included five years for the 2008 serious felony prior conviction.

DISCUSSION

I

A trial court may not increase a defendant's prison term based upon a prior felony conviction obtained in violation of the defendant's constitutional rights. (*People v. Allen* (1999) 21 Cal.4th 424, 429 (*Allen*).) Courts permit pretrial collateral attacks on prior convictions used for sentencing enhancement in limited circumstances where a determination of an alleged constitutional violation may be made without disrupting efficient judicial administration: (1) denial of counsel (*id.* at p. 431; *Garcia v. Superior*

*Court* (1997) 14 Cal.4th 953, 963, citing *Gideon v. Wainwright* (1963) 372 U.S. 335)[3] or (2) failure to secure a proper waiver of the defendant's rights to a jury trial, silence, and confrontation (*Boykin-Tahl* rights) (*Allen*, *supra*, at p. 442; *People v. Sumstine* (1984) 36 Cal.3d 909, 918-919 (*Sumstine*), citing *Boykin v. Alabama* (1969) 395 U.S. 238 & *In re Tahl* (1969) 1 Cal.3d 122).  Otherwise, the validity of a prior conviction is typically litigated in a separate proceeding, such as habeas corpus.  (*Allen*, at p. 429; *People v. Villa* (2009) 45 Cal.4th 1063, 1074.)

Salazar contends the limited category of pretrial motions to strike or invalidate prior convictions should be expanded to include challenges to the factual basis for a prior plea under section 1192.5.  Section 1192.5 requires a court to inquire to "satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea." (§ 1192.5.)  Although there is no federal constitutional requirement for a factual basis inquiry, the Supreme Court has observed "the statutory mandate of section 1192.5 helps ensure that the 'constitutional standards of voluntariness and intelligence are met.' " (*People v. Holmes* (2004) 32 Cal.4th 432, 438 (*Holmes*).)

---

3    In *Garcia*, the Supreme Court concluded collateral attacks on prior convictions based on ineffective assistance of counsel claims should not be entertained in pretrial motions because such motions would disrupt, rather than further, the effective administration of justice.  Such matters, which typically are not resolved on the record alone, are more appropriately resolved on habeas corpus.  (*People v. Garcia*, *supra*, 17 Cal.4th at pp. 964-965.)

We need not decide if a challenge to the factual basis for a plea under section 1192.5 should be considered a constitutional defect subject to a pretrial motion to strike.[4] In this case, the court considered and denied Salazar's pretrial challenge to his prior conviction by way of a petition for writ of error *coram nobis,* alternatively framed as a motion to set aside the conviction. Even if this was not the proper vehicle for challenging the factual basis of a prior plea, the court did not err in denying the motion because, as we shall explain, Salazar did not meet his burden to establish an actual denial of his constitutional rights.

## II

A defendant challenging a prior conviction by way of a motion to strike must allege "actual denial of his constitutional rights." (*Sumstine, supra,* 36 Cal.3d at p. 922.) Once the prosecution produces evidence the defendant suffered the alleged prior conviction, " 'the defendant shall thereupon have the burden of producing evidence that his constitutional [ . . . rights were] infringed in the prior proceeding at issue.' " (*Id.* at

---

[4] "As a prudential matter, we routinely decline to address constitutional questions when it is unnecessary to reach them." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 17, fn. 13.) "Generally, courts should not pass on constitutional questions when a judgment can be upheld on alternative, nonconstitutional grounds. Courts should follow a policy of judicial self-restraint and avoid unnecessary determination of constitutional issues." (*California Teachers Assn. v. Board of Trustees* (1977) 70 Cal.App.3d 431, 442; *People v. Pantoja* (2004) 122 Cal.App.4th 1, 10 [when statutory grounds dispose of an issue, courts should avoid constitutional questions because " 'we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us' "].)

p. 923, quoting *People v. Coffey* (1967) 67 Cal.2d 204, 217.) If the defendant meets this burden, the prosecution may then produce rebuttal evidence. (*Ibid*.)

Salazar presented no evidence his guilty plea was not entered into knowingly or voluntarily.[5] Instead, Salazar's challenge focuses on the stipulation to the preliminary hearing transcript as the factual basis for the plea. He contends "the court's acceptance of a stipulation that the preliminary hearing provided a factual basis for the plea, when in fact, it did not . . . constitutes a failure of the court to comply with its obligation to ensure that there is a factual basis for the plea." He further contends, "where the record does not establish that there is a factual basis for a plea, neither does it establish that the constitutional standards of voluntariness and intelligence have been met." (Underscoring omitted.)

In essence, Salazar argues the alleged silence of the preliminary hearing transcript about whether Salazar attempted to intimidate or dissuade his wife from testifying truthfully establishes he was denied his constitutional rights. This is insufficient. A defendant cannot rely on mere silence in the record to meet his or her burden of challenging a prior conviction by collateral attack in a pretrial proceeding. (*Sumstine*, *supra*, 36 Cal.3d at p. 924.)

---

5    Salazar's declaration in support of his motion to set aside the prior conviction states, "I never knew that the plea bargain I entered into in this case lacked an adequate factual basis when I pled guilty." He states his new attorney told him his prior plea bargain "was arguably unconstitutional, because there wasn't a factual basis for my plea of guilty." Salazar does not state he did not knowingly and voluntarily enter his guilty plea to the charge of witness intimidation under section 136.1, subdivision (a). Nor does he deny he attempted to intimidate his wife or otherwise influence her to change her testimony at the 2008 preliminary hearing.

Additionally, "a trial court possesses wide discretion in determining whether a sufficient factual basis exists for a guilty plea. The trial court's acceptance of the guilty plea, after pursuing an inquiry to satisfy itself that there is a factual basis for the plea, will be reversed only for abuse of discretion." (*Holmes*, *supra*, 32 Cal.4th at p. 443.)

To establish a factual basis for a plea, the court is not required to question the defendant about each element of the charged offense or possible defenses. (*Holmes*, *supra*, 32 Cal.4th at pp. 440, 442.) Nor is it necessary for the court to be convinced of the defendant's guilt. (*Ibid.*) A trial court may satisfy its statutory duty under section 1192.5 by either making an inquiry from the defendant or from defense counsel. (*Holmes*, at pp. 440, 442.) A "stipulation by counsel to the plea's factual basis is consistent with the legislative purpose of the statute. While defendant may not be in a position to recognize whether his acts do or do not ' "constitute the offense with which he is charged" ' [citation], defense counsel is well suited to make such a determination." (*Id.* at p. 440, fn. 5.)

The Supreme Court has made clear a trial court may accept a stipulation from defense counsel about the existence of a factual basis for the plea, even without reference to a particular document. (*People v. Palmer* (2013) 58 Cal.4th 110, 118 (*Palmer*).) Defense counsel has broad authority to stipulate to factual and procedural matters on behalf of a client and such stipulations obviate the need for proof. (*Ibid.*) The court explained trial courts should be afforded "flexibility in establishing a factual basis for the plea, without undermining the primary goal of assuring that the defendant entered the plea voluntarily and intelligently" because, in part, "a rule limiting trial courts' discretion

13

to accept conditional pleas predicated on stipulations by counsel would raise potential concerns for the defense function." (*Id*. at p. 119.) The *Palmer* court further explained, "defense counsel may advise acceptance of a plea agreement based in part on admissions the client has made or on other defense investigation, and may rely on such admissions or investigation in stipulating to the factual basis for a plea. We will not read into section 1192.5 a requirement that counsel explicitly refer to those privileged sources as the basis for the stipulation." (*Ibid*.)

In this case, the preliminary hearing judge, after hearing the testimony of Christina and the police officers and reviewing the evidence, made factual findings Christina did not provide credible or truthful testimony when she recanted and attempted to absolve Salazar by blaming herself for the altercation. Instead, the court found Christina's statements to the police officers were credible. The court also found Salazar "looks like a guy who can handle himself. He looks pretty well put together and physically competent. And certainly she would be no physical match for him."

After the preliminary hearing, the court granted a motion to amend the complaint to add the witness intimidation charge under section 136.1, subdivision (a). Salazar agreed to plead guilty to this charge to obtain a deal for the shortest amount of prison time possible.

At the change of plea hearing, the court confirmed Salazar had enough time to talk to his lawyer about the charges and any potential defenses. He affirmed he understood what was going on in court and no one forced him to plead guilty. In addition, the court confirmed Salazar signed and understood everything on the change of plea form, which

14

included an acknowledgment his conviction would be a serious felony "strike" that would result in substantially increased penalties in future felony cases.

Salazar admitted in the change of plea form to the charge of witness intimidation under section 136.1, subdivision (a) and stipulated to the transcript of preliminary hearing (at which he was present) as providing a basis for the charge. At the change of plea hearing, in Salazar's presence, defense counsel and the prosecutor confirmed all parties stipulated to the preliminary hearing transcript as containing "a factual basis." Salazar entered his guilty plea without objection. At no time did Salazar protest his factual innocence. The court also solicited a statement from defense counsel affirming a belief the plea was in Salazar's best interest.

The fact the defense attorney and the defendant, both of whom were present at the preliminary hearing, agreed what occurred at the hearing supported a factual basis for a witness intimidation charge is sufficient. Defense counsel was not required to state on the record precisely how the preliminary hearing provided a basis for the plea or any other privileged sources of information leading to the advice to accept the plea. (*Palmer*, *supra*, 58 Cal.4th at p. 119.)

Based on this record, we find no procedural error in the acceptance of Salazar's 2008 plea. We conclude the stipulation that the preliminary hearing transcript contained a factual basis satisfied the requirements of section 1192.5 and the trial court acted within its discretion by accepting Salazar's plea. Because Salazar did not meet his burden to establish his constitutional rights were violated, the court properly denied his challenge to the 2008 conviction for sentence enhancement.

15

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

O'ROURKE, J.

16